FILED

98 SEP 29 AM 9: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HOWARD McLAUGHLIN,           }
                             }
        Plaintiff,           }
                             }
v.                           }          CASE NO. CV 96-B-2105-S
                             }
RHODES FURNITURE,            }
                             }
        Defendant.           }

**ENTERED**

SEP 2 9 1998

## MEMORANDUM OPINION

Currently before this court is the Motion for Summary Judgment of defendant Rhodes

Furniture ("Rhodes"). The present action arises out of the claims of plaintiff Harold McLaughlin

that his former employer, Rhodes, terminated his employment in violation of the Americans with

Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA").

Furthermore, McLaughlin claims that he was subject to a hostile work environment based on his

age. Upon consideration of the record, the submissions of the parties, the arguments of counsel,

and the relevant law, this court is of the opinion that Rhodes's Motion is due to be granted.

## FACTUAL SUMMARY

Harold Dean McLaughlin, born December 19, 1948, became an employee of Rhodes

Furniture at Huntsville, Alabama in December 1985. (McLaughlin Dep. at 50.) His application

for employment indicated he had a "stiff back" that "should not effect [sic] work." (Exhibit D to

Defendant's Evidentiary Submission.) He is a high school graduate and holds a business college

certificate in computer programming and data processing. (McLaughlin Dep. at 19-20.) Prior to

working at Rhodes, McLaughlin obtained management and data processing experience with other



employers. (Exhibit D to Defendant's Evidentiary Submissions.)

McLaughlin was employed by Rhodes for eight-and-a-half years. (McLaughlin Dep. at 67-68.) From 1989 to 1994, he was a warehouse manager. (McLaughlin Dep. at 66, 200.) As warehouse manager, McLaughlin would oversee the area's daily operation. (McLaughlin Dep. at 77-78.) Throughout McLaughlin's employment at Rhodes, he "occasionally had to lift furniture when there was no help available and immediate lifting was necessary." (McLaughlin Aff. ¶ 13.) This occasional lifting was difficult for McLaughlin and caused pain and stiffness in his back, neck and shoulders. (*Id.*) McLaughlin also stated that from April through June 1994, he did "quite a bit of lifting" on Wednesdays, which resulted in pain and stiffness, because his store manager, David Wallace, reassigned other workers from the warehouse to the showroom. (*Id.* at ¶ 14.) On July 5, 1994, Wallace directed a "general warehouse cleanup". (*Id.* at ¶ 16.) McLaughlin testified that he performed "quite a bit of manual labor that day," because helpers were assigned to the showroom, which caused him to be absent from work for four days due to pain and illness. (*Id.*)

When McLaughlin returned from sick leave, he was fired. (McLaughlin Aff. ¶ 17.) However, the parties' account of the events surrounding his termination differ significantly. Wallace indicated that he told the plaintiff that he could not continue as warehouse manger because of his refusal to enforce the company's no-smoking policy. (Wallace Dep. at 89-92). Wallace testified that he offered McLaughlin several other positions in the store, but McLaughlin refused. (*Id.*) Thus, Wallace claims he was forced to discharge McLaughlin based on his unwillingness to perform his responsibilities as warehouse manager. (*Id.* at 92.) However, McLaughlin testified that on the morning of his termination Wallace never mentioned the no-smoking policy and he never refused to enforce the no-smoking policy. (McLaughlin Aff. ¶ 17.)

2

McLaughlin further claims that when he was terminated, Wallace told him that he was using his back problems as an excuse for not doing work. (McLaughlin Dep. at 137.)

McLaughlin has a back condition known as rheumatoid arthritis and ankylosis spondylitis which he acquired after a bout with rheumatic fever in seventh grade. (McLaughlin Dep. at 20-22.) McLaughlin claims that there are various ways in which this condition impairs his ordinary activities. He cannot watch the ground in front of him when he walks and he must avoid too much climbing of stairs because of back stiffness. (McLaughlin Aff. ¶ 5.) When he has dental or medical appointments he must make special arrangements for pillows in order to sit in a dentist's chair or lie on an X-ray table, and pre-medication to prevent infection. (*Id.*) McLaughlin cannot look up at the ceiling or high on a wall. He can only sit in certain locations at movie theaters or sports arenas because his condition prevents him from seeing in certain locations. (*Id.*) He cannot do any household lifting or heavy household labor. (*Id.*) His condition also prevents him from doing heavy manual labor or substantial lifting, but he is able to perform supervisory jobs. (McLaughlin Aff. ¶ 4.) In his deposition, McLaughlin read an evaluation written by his personal physician, Dr. John A. Higginbotham, who opined in October 1994, shortly after McLaughlin's discharge, that he "does not have severe pain, and he is not limited from any kind of work activity except for heavy manual labor." (McLaughlin Dep. at 143-46).

During his period of employment, McLaughlin alleges that Wallace made three age-related comments about employees. In a manger's meeting where 401K plans and retirement were being discussed, Wallace stated to McLaughlin that "you will be using yours pretty soon, a man of your age." (McLaughlin Dep. at 107.) On another occasion when Wallace and McLaughlin were discussing an older employee, Wallace said "[h]e is too old to understand what I am telling him.

3

He is too old to change. He is too old to follow my directions. But I can take care of that." (*Id.* at 109.) On the morning that Wallace fired McLaughlin, he told him, "[y]ou will never have managers like you have had in the past. Rhodes is going in a different direction." (*Id.* at 107.)

McLaughlin was replaced as warehouse manager by Keith D'Armond. (McLaughlin Dep. at 111-12.) There is no document verifying D'Armond's age or any testimony from D'Armond. To show the comparator's age, McLaughlin relies upon Bret Smith's affidavit testimony that "Keith is younger than Harold, and in my judgment appeared to be in his thirties" and McLaughlin's deposition testimony that he did not know D'Armond's age, but in 1994, "[h]e was probably in his middle to early thirties." (Smith Decl. ¶ 8; McLaughlin Dep. at 112.)

McLaughlin filed a charge of discrimination with the Equal Employment Opportunity Commission. (Defendant's Exhibit 9). The EEOC unit supervisor who investigated the claim recommended dismissal for lack of cause for two reasons: (a) McLaughlin was fired for failure to enforce Rhodes's no-smoking policy; and (b) there was no evidence of disparate treatment or any indication that Rhodes's employment action was related to a disability. (*Id.*) McLaughlin obtained a right-to-sue letter and initiated this lawsuit on August 12, 1996.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e)

4

requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue

for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be

believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless,

the nonmovant need not be given the benefit of every inference but only of every *reasonable*

inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## I. AGE DISCRIMINATION CLAIMS

### A. Termination Claim

In cases brought under the ADEA, the plaintiff bears the ultimate burden of proving by a

preponderance of the evidence that age was a determining factor in the employer's decision to

terminate his employment. *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th

Cir. 1997). Initially, plaintiff must establish a prima facie case of age discrimination through one

of three methods: direct evidence of discriminatory intent; presenting circumstantial evidence

which complies with the test set forth by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by presenting a statistical pattern

of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Since

McLaughlin did not submit statistical evidence, this court only needs to address the first two

5

methods. If a plaintiff produces direct evidence of discriminatory intent, the employer must prove that it would have reached the same employment decision absent any discriminatory intent. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11ᵗʰ Cir. 1988). Alternatively, if a plaintiff establishes a prima facie case pursuant to the *McDonnell Douglas* test, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Zaben,* 129 F.3d at 1457. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's proffered reason is pretextual. *Id.*

Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter*, 870 F.2d at 581-82. If the employee produces direct evidence of discrimination, the employer must prove that the same employment decision would have been made absent any discriminatory intent. *Id.* For a derogatory statement or slur to constitute direct evidence, the remark or slur must be attributable to the decisionmaker at issue. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (holding that statements made by a non-decisionmaker were too attenuated to present a genuine issue of material fact as to the employer's discriminatory intent); *see also LaMontagne v. American Convenience Products*, 750 F.2d 1405, 1412 (7th Cir. 1984) (age-related comments allegedly made by employer's Vice-President not relevant to question of whether plaintiff's discharge was discriminatory as Vice-President had no authority to discharge plaintiff). The Eleventh Circuit has also recognized that "statements by decisionmakers unrelated to the decisional process itself" do not constitute direct evidence "requiring the employer to prove

that its hiring or professional decisions were based on legitimate criteria."[1] *Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring)); *see also Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991).

Accordingly, "not every comment concerning a person's age presents direct evidence of discrimination." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988). The Eleventh Circuit has repeatedly made clear that remarks that merely refer to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination. *Id.* For example, in *Carter* the Eleventh Circuit held that the comment "little old Jewish lady" made by a superior "clearly falls far short of the type of evidence that this Circuit has recognized as direct evidence of discrimination." *Carter*, 870 F.2d at 582. "Rather, courts have found only the most blatant remarks whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *Id.* In another case, the Eleventh Circuit held that written and oral comments that plaintiff lacked the "wherewithal" to perform his job, "moved in slow

---

[1] "Direct evidence is '[e]vidence which if believed, proves existence of fact in issue *without inference or presumption.*'" *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). Although it may seem reasonable to infer that a person who makes a discriminatory remark outside of the decisional process will conduct business in a discriminatory manner, such a conclusion requires an inference. Therefore, comments made completely outside of the decisional process do not constitute direct evidence that the speaker discriminated in making the employment decision at issue. *Compare Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930-31 (11th Cir. 1995) (holding that employer's statement that women were not tough enough to do the job constituted direct evidence of sex discrimination) *with Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920, 923-24 (11th Cir. 1990) (holding that decisionmaker's statement to black employee that "you people can't do a --------- thing right" did not constitute direct evidence of discrimination).

7

motion," and was "not proactive," "not aggressive," and "approximately the same age as [supervisor's] father" did not constitute direct evidence of discrimination. *Young*, 840 F.2d at 829. Similarly, a remark by personnel manager to terminated security guard that in order to transfer "you would have to take another physical examination and at your age, I don't believe you could pass it" also did not constitute direct evidence of discrimination. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 610-11 (11th Cir. 1987).

According to McLaughlin, at a meeting where 401k and retirement plans were discussed, Wallace said, "you will be using yours pretty soon, a man of your age." (McLaughlin Dep. at 106-07). Regarding one of McLaughlin's co-employees, Wallace said, "[h]e is too old to understand what I'm telling him. He is too old to change. He is too old to follow my directions. But I can take care of that." (*Id.* at 109). On the morning his employment was terminated, Wallace told McLaughlin, "[y]ou will never have managers like you have had in the past. Rhodes is going in a different direction." (*Id.* at 107). Applying the Eleventh Circuit case law to these alleged statements, the court concludes that, taken alone or collectively, they do not amount to direct evidence of discrimination. There is no nexus between the alleged discriminatory remarks and McLaughlin's discharge. There is no evidence that the remark at the retirement plan meeting was proximate in time to the date McLaughlin was fired. Some of the comments did not even refer to McLaughlin. All of the remarks attributed to Wallace fall short of the type of proof considered direct evidence of discrimination by the Eleventh Circuit.

With the exclusion of the statements attributed to Wallace, McLaughlin offered no direct evidence of discrimination with respect to Rhodes's decision to terminate his employment. Therefore, he must proceed to establish a prima facie case using circumstantial evidence which

8

satisfies the *McDonnell Douglas* test. In an ADEA case involving discharge, a plaintiff may establish a *prima facie* case by showing: (1) that he was a member of the protected group of persons between the ages of 40 and 70; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position from which he was discharged; (4) that he was qualified to do the job for which he was rejected. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). "Although a plaintiff's burden in proving a prima facie case is light, ... summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case." *Id.* at 1432-33.

Viewing the evidence in the light most favorable to McLaughlin, this court finds that the plaintiff has established a prima facie case of age discrimination. McLaughlin satisfies the first · two elements of the test because he is over forty and he was terminated. While the plaintiff did not establish that Mr. D'Armond, his replacement, was substantially younger, he did testify that the D'Armond was obviously younger than himself. In *Carter*, the Eleventh Circuit found a prima facie case was established because "Carter did at least show he was replaced by a younger person."[2] *Carter*, 870 F.2d at 583. In addition, this court finds that plaintiff was qualified for the job from which he was terminated.

Once the plaintiff establishes a prima facie case the burden of production shifts to the defendant to assert "reasons for its actions which, if believed by the trier of fact, would support a

---

[2]*See also Carter*, 870 F.2d at 583, n.14("The need for increased flexibility in applying the prima facie criteria to age discrimination cases has been widely acknowledged in the courts.").

finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). Rhodes carried this burden by offering two nondiscriminatory reasons for the plaintiff's dismissal: (1) failure or refusal to enforce the company's no-smoking policy; and (2) ineffective supervision of the warehouse. Thus, since Rhodes carried this burden of production, any presumption raised by the prima facie case is rebutted and is then dropped from the case. *Hicks*, 509 U.S. at 507. Then, McLaughlin "has 'the full and fair opportunity to demonstrate,' through presentation of his own case and cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' and that [age] was." *Id* at 508 (citations omitted).

McLaughlin's only proof of age discrimination are the three aforementioned statements made by Wallace. It should be noted that one of these comments was not directed at the plaintiff. Taken together these comments do not show the type of animus needed to prove intentional discrimination based on age. No reasonable jury could infer from this evidence that Rhodes intentionally discriminated against McLaughlin because of his age. Thus, the defendant's motion for summary judgment on the claim of discriminatory discharge under the ADEA is due to be granted.

## B. Hostile Work Environment Claim

McLaughlin asserts that he was subjected to a hostile work environment at Rhodes because of his age. A hostile work environment claim under the ADEA has not been expressly

10

recognized by the Eleventh Circuit.[3] In *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830 (6th Cir. 1996), the Sixth Circuit became the only circuit court of appeals to recognize this claim. In *Crawford*, the court established a four-part test that a plaintiff must meet in order to establish a prima facie case of hostile work environment under the ADEA: 1) the employee is forty years or older; 2) the employee was subjected to harassment, either through words or actions based on age; 3) the harassment had the effect of unreasonably interfering with the employee's work performance in creating an objectively intimidating, hostile, or offensive work environment; 4) there exists some basis for liability on the part of the employer. *Id.* at 834-35 (citing EEOC Compliance Manual § 615.7).

In order for harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank v. Vinson.* 477 U.S. 57, 67 (1986). A plaintiff must subjectively feel that an environment is hostile, and the environment must in fact be objectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1986). However, it is not necessary that the plaintiff be committed to a psychiatric institution in order to have a legal complaint. *Id.* The Supreme Court has counseled that the totality of the circumstances be considered in applying this standard. *Id.* at 23.

The hostile environment claim in this case is similar to the allegations in *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). In *Crawford*, a supervisor supposedly

---

[3]The Eleventh Circuit Court of Appeals recently affirmed a district court's denial of a defendant/employer's motion for summary judgment on a hostile environment age discrimination claim. *See U.S. E.E.O.C. v. Massey Yardley Chrysler, Plymouth*, 117 F.3d 1244 (11th Cir. 1997). However, the Court refused to rule on the validity of this claim under the ADEA, stating that: "[n]either party questions, hence we do not actually decide, whether the hostile environment doctrine developed in Title VII actions applies in an ADEA action, . . ." *Id.* at 1249 n.1.

stated that women over 55 should not be working and that "old people should be seen and not heard." *Crawford*, 96 F.3d at 832. Furthermore, the supervisor allegedly called attention to the plaintiff's extremely sensitive hearing and laughed when a coworker said "[i]t's just my luck in an office with an old dumb side to have to sit on that side" *Id.* at 832-33. In granting summary judgment to the employer on the hostile environment claim, the court noted that "the hostility . . . while not insubstantial, was not particularly severe or degrading." *Id.* at 836. The court also pointed out that the plaintiff "has not produced any evidence tending to show that the harassment interfered with her work performance and/or created an objectively intimidating, hostile, or offensive work environment, within the meaning of *Harris*." *Id.*

Similarly, in this case, Wallace's comments, while not very sensitive or appropriate, were not so severe or degrading as to alter the condition of McLaughlin's employment. Furthermore, McLaughlin has not produced any evidence to demonstrate that these comments interfered with his work performance or that they created an objectively hostile work environment. Thus, since McLaughlin has not shown that any harassment based on his age unreasonably interfered with his work performance so as to create an objectively hostile environment, the defendant's motion for summary judgment on the hostile environment claim under the ADEA is due to be granted.

## II. DISABILITY DISCRIMINATION

The ADA prohibits "discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedure, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, condition and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case under the ADA, "a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual;

12

and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). If a plaintiff fails to do so, the employer is entitled to a judgment as a matter of law. *Id.* at 915.

## A. No substantial evidence of an ADA disability.

McLaughlin is unable to satisfy the *prima facie* elements of a case brought under the ADA because a reasonable fact finder could not conclude that he had a "disability" as the term is defined in the Act. An ADA "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Before a physical impairment can trigger coverage under the ADA, it must substantially limit a major life activity. 42 U.S.C. § 12102(2). As the terms 'substantially' and 'major' suggest, impairments must be "substantially limiting and significant." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 913 (11th Cir. 1996). ADA regulations define terms of art such as "major life activities," and "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations further clarify the term "substantially limits" to mean that an individual is: "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [that] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The same section of this regulation addresses the use of the term "substantially limits" as it relates to

13

the major life activity of work:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i); *see also Gordon*, 100 F.3d at 912 (adopting the foregoing test for finding a substantial limitation)

### 1. Life activities other than working.

This court's starting point in examining whether McLaughlin's impairment "substantially limits" a "major life activity" is to examine life activities other than the life activity of work. *See* 29 C.F.R. § 1630.2(j) App. ("If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.").

McLaughlin has the burden of showing that he suffers from, or is regarded as having, an impairment that substantially limits "one or more of [his] major life activities . . . ." 42 U.S.C. § 12102(2). McLaughlin submitted an affidavit to support his contention that he is substantially limited in major life activities other than working. In part, his affidavit states: (i) he is uncomfortable in a dentist's examination chair; (ii) he must carefully select his seat at theaters and sporting events; (iii) he cannot run; (iv) he cannot walk as quickly as others; and (v) he must avoid "too much climbing of stairs." (McLaughlin Aff., ¶ 5.) Discomfort at the dentist and carefully selecting theater seats are not disabilities under the ADA. *See Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. 106, 111 (W.D.N.Y. 1997)(A medical restriction from prolonged sitting is not

14

a disability under the ADA). Likewise, walking slowly and avoiding "too much" stair-climbing does not amount to a disability for purposes of the ADA because a plaintiff has the burden of proving that his impairment "substantially limits" his ability to walk. *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3rd Cir. 1996). Under the ADA, impairments must be "substantially limiting and significant." *Gordon*, 100 F.3d at 913. While McLaughlin's condition does cause him some pain and inconvenience, it does not substantially limit his ability to sit or walk or perform manual tasks as that term has been applied under the ADA.

### 2. **Working limitations**

McLaughlin asserts that his back condition substantially limits his ability to perform his job. However, the inability to perform certain assignments within one's job does not rise to the level of a disability within the meaning of the ADA. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995) ("[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."). McLaughlin has a high school diploma, a business college certificate in computer programming and data processing, and management experience. He is not precluded from working entire classes of jobs because of his alleged disability. Furthermore, McLaughlin testified at his deposition that, to the extent his job involved heavy labor, he could seek assistance.

Generally, courts have been reluctant to find a person disabled within the meaning of the ADA based upon the mere fact a that person is incapable of performing heavy labor. For example, one court held that the "inability to perform heavy lifting does not render a person substantially limited in the major activities of lifting or working." *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996). In addition, another court found that a "twenty-five pound lifting

15

limitation -- particularly when compared to an average person's abilities -- does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *Williams v. Channel Master Satellite Sys.*, Inc., 101 F.3d 346, 349 (4th Cir. 1996). The Eighth Circuit rejected an ADA claim where the plaintiff failed to show he was substantially limited in major life activities when "a 25-pound lifting restriction was the only medical limitation placed upon [plaintiff's] activities." *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1319 (8th Cir. 1996). Furthermore, an impairment does not substantially limit an individual's ability to work simply because it prevents him from performing "'either a particular specialized job or a narrow range of jobs.'" *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1133 (11th Cir.) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j)(3) (1996)), amended on reh'g in part by, 102 F.3d 1118 (11th Cir. 1996); *see also Vaughan v. Harvard Indus., Inc.*, 926 F. Supp. 1340, 1347 (W.D. Tenn. 1996) ("The ADA standard of a class or broad range of jobs, is not easily met; further, the job class, manual labor employment, is not limited to heavy manual labor jobs.").

McLaughlin also relied upon the EEOC's Interpretive Guidelines in an effort to establish a disability under the ADA: "[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." 29 C.F.R. Pt. 1630, App. § 1630.2(j). This "general statement in the Interpretive Guidelines about back [conditions], in isolation, cannot boost [McLaughlin] over the summary judgment hurdle." *Whitfield v. Pathmark Stores, Inc.*, 971 F. Supp. 851, 859 (D. Del. 1997); *see also Dotson v. Electro-Wire Products, Inc.*, 890 F. Supp. 982, 989 (D. Kan. 1995) (Interpretive Guidelines example no substitute for vocational evidence). To withstand summary judgment,

McLaughlin must provide this court with evidence that his "'particular impairment constitutes ... a

significant barrier to employment.'" *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir.

1996) (quoting *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986)).

The EEOC recommends an evaluation of the following factors to determine whether a

person is substantially limited in his ability to work:

> (A)  The geographical area to which the individual has reasonable
>       access;
> (B)  The job from which the individual has been disqualified because of
>       an impairment, and the number and types of jobs utilizing similar
>       training, knowledge, skills or abilities, within that geographical
>       area, from which the individual is also disqualified because of the
>       impairment (class of jobs); and/or
> (C)  The job from which the individual has been disqualified because of
>       an impairment, and the number and types of other jobs not utilizing
>       similar training, knowledge, skills or abilities, within that
>       geographical area, from which the individual is also disqualified
>       because of the impairment (broad range of jobs in various classes).

29 C.F.R. Pt. 1630, App. § 1630.2(j). McLaughlin has not come forth with evidence that would

permit a meaningful analysis of the factors recommended by the EEOC. "Although a plaintiff

seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she

cannot perform, the person must provide some evidence beyond the mere existence and impact of

a physical impairment to survive summary judgment." *Swain v. Hillsborough County School

Board,* 146 F.3d 855, 858 (11th Cir. 1998). Noting a similar failure of proof on the part of an

ADA claimant, the Eleventh Circuit observed:

> 'The inability to perform a single, particular job does not constitute
> a substantial limitation in the major life activity of working.' . . .
> Swain has offered no evidence that addresses the factors listed in
> the regulations or that otherwise suggests her impairments
> substantially limit her ability to work. She has thus failed to create
> a genuine issue of material fact as to whether she has a disability
> under the ADA.

*Swain,* 146 F.3d at 857-58 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Similarly, McLaughlin has not demonstrated that a person with his particular educational and vocational background has a substantial impairment in his ability to seek and to perform work based on a proscription from engaging in heavy manual labor.

An individualized inquiry reveals that McLaughlin has failed to show an ADA disability.[4] He has a high school diploma, a business college certificate in computer programming and data processing, and management experience. He has not produced any evidence demonstrating that his medical limitations affect his ability to secure employment.[5] *Cf. Whitfield,* 971 F. Supp. at 859. ("While the record contains evidence of Whitfield's medical limitations, there exists nothing connecting those limitations to ability to perform other jobs in the community."). McLaughlin has not satisfied the threshold requirement of presenting substantial evidence that he "has an impairment which is a 'substantial limitation to working.'" *Patrick v. Southern Co. Serv.* 910 F. Supp. 566, 570 (N.D. Ala. 1996). A plaintiff is required to show that his limitation restricts his

---

[4]*See* 29 C.F.R § 1630.2(j)(3)(ii) (worker's background and expertise are relevant in determining whether that individual is disabled).

[5]One could make the same observation of McLaughlin that the Eleventh Circuit made of the plaintiff in *Swain.* Swain had argued that her incontinence was a disability under the ADA, a physical ailment that substantially limited a major life activity. In upholding summary judgment for the employer, the court stated:

> Not only does the record contain no evidence to support Swain's argument, but Swain's own testimony and employment record belie any claim that she cannot perform a broad range or class of jobs that individuals of similar skill, ability, and training can perform. Prior to the events leading to her retirement, Swain worked as a teacher and administrator for nearly 30 years . . . During that period, Swain's ability to work was unaffected by her impairments. No evidence suggests that Swain's ailments worsened at any time relevant to this action. Moreover, Swain acknowledged in her deposition that she could return to teaching. In sum, Swain's proffered evidence does not create an issue of material fact concerning her inability to perform a broad class of jobs due to her physical ailments.

*Swain,* 146 F.3d at 858.

18

ability to perform a class of jobs, or a broad range of jobs, when compared against a person

having comparable training, skills and abilities. *See Patrick*, 910 F. Supp. at 570 (citing 29 C.F.R.

§ 1630.2(j)(3)(i)).   Since the plaintiff has not met this burden or otherwise shown that he has a

condition which substantially limits a major life activity, he is not "disabled" as defined in the

ADA.

### B. There is no "record" of an ADA disability.

An  ADA disability requires a "record" of "impairment."  42 U.S.C. § 12102(2)(B).  The

record of an impairment "must be one that substantially limits a major life activity ...."  *Dotson*,

890 F. Supp. at 990.  McLaughlin does not have an "impairment."  Dr. Higginbotham's note that

McLaughlin cannot engage in "heavy manual labor" does not constitute a "record of impairment".

*See, e.g., Ray*, 85 F.3d at 229 (doctor's note restricting claimant to a ten-pound lifting restriction

did not establish a record of an impairment limiting a major life activity); *Dotson*, 890 F. Supp. at

990 (doctor's note restricting claimant from "hard physical labor rising [sic] her hands" did not

satisfy claimant's burden of proof).

### C. McLaughlin was not "regarded" as having an impairment.

Instead of actually having a disability or a record of a disability, an ADA claimant may be

"regarded" as having an "impairment."  42 U.S.C. § 12102(2).  The EEOC Guidelines separate

the definition of the phrase "regarded as having such an impairment" into three separate

19

categories:

    (1)    Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such a limitation;

    (2)    Has a physical or mental impairment that substantially limits a major life activity only as a result of the attitudes of others toward such impairment; or

    (3)    Has none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*). With respect to "perceived impairments," the Eleventh Circuit has observed: "As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Gordon*, 100 F.3d at 913 (citations omitted).

The record would not permit a reasonable fact finder to determine that McLaughlin was regarded by Rhodes as having an impairment that substantially limited his ability to care for himself or to work. McLaughlin was employed by Rhodes for eight-and-a-half years. McLaughlin's affidavit stated that he "informed [Wallace] that [he] had limitations because of [his] health regarding [his] need for help in the warehouse lifting furniture." (McLaughlin Aff., ¶ 10).

In his application for employment at Rhodes, McLaughlin indicated that he had a "stiff back" that "should not effect [sic] [his] work." (Exhibit D to Defendant's Evidentiary Submission.) The record contains two items of evidence which could form the basis of Rhodes's perception of McLaughlin and his condition: (1) the application for employment; (2) McLaughlin's affidavit testimony that he told his supervisor that he had limitations and needed help in the warehouse lifting furniture. There is no substantial evidence that a Rhodes warehouse

manager was required to lift furniture. McLaughlin admitted that he could call for assistance when furniture needed to be lifted. The ADA provision pertaining to perceived disabilities "is intended to combat the effects of 'archaic attitudes' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8ᵗʰ Cir. 1995). The record indicates that Rhodes's perception of McLaughlin, that he was physically able to perform the duties of warehouse manager, was not based on myth, but on his own statements. *See id.* at 386 ("Farmland Foods' perception of Wooten's impairment . . . was not based upon speculation, stereotype, or myth, but upon a doctor's written restriction of Wooten's physical abilities."). Thus, McLaughlin has not demonstrated that Rhodes "regarded" him as having an impairment that substantially limited his major life activities.

Therefore, since McLaughlin does not have a physical or mental impairment that substantially limits one or more of his major life activities, has no record of such an impairment, and was not regarded as having such an impairment, he is not considered disabled under the ADA. Thus, the defendant's motion for summary judgment on the ADA claim is due to be granted.

## CONCLUSION

Based on the foregoing, this court is of the opinion that the motion for summary judgment filed by Rhodes is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this __29ᵗʰ__ of September, 1998.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

21